No. 24,942.

THE STATE OF KANSAS, *Appellee,* v. HENRY LOGUE, *Appellant.*

SYLLABUS BY THE COURT.

1. LIQUOR LAW—*When Requested by the Jury the Official Stenographer May Read to the Jury from His Notes in the Presence of Defendant and the Attorneys for Both Parties the Evidence Given by a Witness upon the Trial.* In the trial of a criminal case, after the jury has been charged by the court and has deliberated for some hours, it is not error for the court, at the request of the jury, to require the official stenographer to read the testimony of witnesses which was taken down by him while the witnesses were on the stand.

2. SAME—*Evidence Supports Verdict.* In a prosecution for violation of the prohibitory liquor law, the evidence examined and held sufficient to support the verdict of the jury.

3. SAME—*Indorsing of Names of Witnesses on Information During Trial—Judicial Discretion.* The granting of leave to indorse the names of witnesses on an information during the trial of a case is a matter resting in the sound discretion of the trial court.

Appeal from Pratt district court; GEORGE L. HAY, judge. Opinion filed February 9, 1924. Affirmed.

*E. R. Barnes,* of Pratt, for the appellant.

*D. E. McCrory,* county attorney, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant was convicted of violating the prohibitory liquor law and appeals.

1. The defendant complains that the court erred in allowing the court stenographer to read the testimony of one of the state's witnesses after the jury had deliberated for some hours. He contends that the reading of this particular testimony from the stenographer's notes gave the testimony undue emphasis.

The question appears not to have been passed upon in a criminal case by this court, but in civil cases it has been said to be discretionary with the trial court as to whether the jury may hear the evidence of any of the witnesses read from the stenographer's notes. (See *Cannon v. Griffith,* 3 Kan. App. 506; *Hairgrove v. Millington,* 8 Kan. 480; *Thompson v. McEwen,* 24 Kan. 757.) The authorities of other states are not in accord as to whether or not evidence of witnesses may be read to the jury from the stenographer's notes. The practice was disapproved by the supreme court of Nebraska in *Bartell v. State,* 40 Neb. 232, on the ground that the constitution guarantees to the accused of crime the right to meet the witnesses face to face, and that the reading of the evidence by the reporter was hearsay. Defendant cites *Padgitt v. Moll,* 159 Mo. 143; *Hersey v. Tully,* 8 Col. App. 110. Other courts take the view that it is not error to permit the reading of the testimony by the court reporter to the jury.

In *People v. Shuler,* 136 Mich. 161, where defendant was prosecuted for selling intoxicating liquor, it was said:

"After the jury had retired to consider their verdict, they wished information as to certain testimony which had been produced before them, and the court complied with their request. We think this was a matter within the discretion of the court, and that it was not reversible error." (p. 167.)

In *State v. Perkins,* 143 Iowa 55, it was said:

"It is proper for the jury to return to the court room during its deliberations and upon its request for the reporter to read to them from his notes portions of the testimony, when done at the direction of the court and in the presence of counsel for both parties; and the objection that undue prominence is given the evidence thus read is not tenable." (Syl. ¶ 2. See, also, *Roberts v. Atlanta Con. St. Ry. Co.,* 104 Ga. 805; *American Nat'l Bank v. Haggerton,* 250 S. W. [Tex.] 279, 284; Note 21 L. R. A., n. s., 931; *Morman v. The State,* 110 Ga. 311.)

In *Green v. The State,* 122 Ga. 169, it was said:

"In the trial of a criminal case, if the jury, after having been charged by the court and retired to their room, disagree as to the testimony of certain witnesses, it is not error for the court, at the request of the jury, and in the presence of the accused and his counsel, to require the official stenographer to read the testimony of the witnesses which is in dispute, and which was taken down by him while the witnesses were on the stand."

In the opinion it was said:

"We do not think the judge below committed error in complying with this request of the jury. The stenographer is a sworn officer of the court. He is

sworn faithfully to perform the duties of his office, which include the taking down of the testimony of the witnesses correctly. Having been appointed by the court, the presumption is that he is an efficient officer, and is capable of performing his duty. This being so, why not allow the jury to hear the testimony as taken down by him, and to reconcile their differences as to what the witnesses have sworn by this method? It seems to us a just and proper practice in the transaction of the business of the court, and a much better one than to stop the proceedings, send out for the witnesses, and re-examine them as to what they have already sworn on the trial. In the motion there is no complaint that the stenographer was incompetent, or that the testimony he read was not that delivered by the witnesses." (p. 170.)

Under the statutes in this state the court reporter is a sworn officer of the court (R. S. 20-901). Before being appointed to the position of court reporter he must first be examined as to his competency by a committee of at least three members of the bar. He must be able to write, in the presence of such a committee, at the rate of at least 150 words per minute for five consecutive minutes upon matter not previously written or known to him (R. S. 20-905). Before entering upon the duties of his office he must take and subscribe the official oath (R. S. 20-902). It shall be his duty to attend upon the sessions of the court of which he is reporter at each term, to take full stenographic notes of the evidence and oral proceedings as directed by the judge. He shall file the original notes so taken and all exhibits admitted in evidence in the office of the clerk of the court and his notes shall thereafter at all times remain a part of the files in the office of such clerk. He may not appear or advise as attorney or counselor in any case pending in the court of which he is official reporter (R. S. 20-903). The safeguards · thrown around the reporter and the evidence which he has taken would, it would seem, furnish the most accurate means of reproducing evidence had upon the trial. Parties seeking to reproduce evidence could rely upon its accuracy more readily than on the witness' memory of his exact statement. The defendant does not complain of any inaccuracy in the testimony, as read. No objection was made at the time the evidence was read to the jury. If testimony can be reproduced by a sworn officer of the court, especially, where there is no complaint of inaccuracy or partiality, there appears no sound reason why, under our liberal procedure, the case should, on that account, be reversed.

2. Defendant contends that the verdict was not supported by the evidence. One witness testified that he was working on William

McGuire's farm near Pratt; that he was acquainted with the defendant; that he saw the defendant bring intoxicating liquor to the farm; that on one occasion he brought a half gallon of whisky; that it was in a half gallon fruit jar; that on another occasion defendant brought this "stuff" to the farm and inquired for Mr. McGuire. Defendant was told that Mr. McGuire was not there and he said that he had some stuff for him. Defendant took out some jars and set them in the granary. "There were two quarts. It was white looking stuff." On another occasion defendant came and said "he was looking for Mr. McGuire;" that "he left two halves right by the door where the other was." As witness was coming back from the house he met Mr. McGuire and Mr. Logue going out. "They stopped and asked me if the stuff was there. I told them it was where he (defendant) left it. McGuire said, 'We are going out after it.' The liquor was left setting in the granary close to the door." Darrell McGuire, a witness, testified that the defendant "brought liquor out there to the farm quite a few times. I saw him about three times bring stuff. He came in a car and put it in the granary. Had a half gallon in fruit jars. Henry Logue brought this stuff there two or three times. Father was partly drunk that afternoon."

There was other similar testimony.

Defendant contends that the evidence was insufficient to show that the liquid was intoxicating liquor. It would serve no useful purpose to further detail the testimony or to write a long opinion giving our conclusions. We are convinced from a reading of the record that the evidence was sufficient to support the verdict of the jury.

3. Defendant complains that the trial court erred in allowing names of witnesses to be indorsed on the information during the trial of the case. This was a matter resting in the sound discretion of the trial court.

In *State v. Tassell*, 87 Kan. 861, 126 Pac. 1090, it was said:

"It has been determined that the court is vested with discretion to allow the names of witnesses to be indorsed on the information after it has been filed and even during the trial, and that unless there is an abuse of that discretion the defendant has no cause to complain. In *The State v. Cook*, 30 Kan. 82, 1 Pac. 32, it was said: 'The prosecution ought not to be defeated simply because the county attorney does not indorse the names of the witnesses at the time of filing the information, or before the trial, for often, during the progress of the trial, a necessity arises for the introduction of evidence which could not have been anticipated on the part of the prosecution before the commence-

ment thereof. . . . In all cases where the request to indorse the names of witnesses upon the information during the trial is made in good faith, and to promote justice, the court has the authority to grant the same, keeping in view the just administration of the criminal laws and the right of the defendant for reasonable time to prepare to meet unexpected evidence.' (See, also, *The State v. Sorter,* 52 Kan. 531, 34 Pac. 1036; *The State v. Reed,* 53 Kan. 767, 37 Pac. 174; *The State v. Price,* 55 Kan. 606, 40 Pac. 1000; *The State v. McDonald,* 57 Kan. 537, 46 Pac. 966.)" (p. 863; see, also, *The State v. Hoerr,* 88 Kan. 573, 129 Pac. 153; *The State v. Pack,* 106 Kan. 188, 186 Pac. 1002; *The State v. Phillips,* 106 Kan. 192, 186 Pac. 743.)

The judgment is affirmed.