No. 70,304

STATE OF KANSAS, *Appellee*, v. DENNIS T. BOYD, *Appellant.*

(891 P.2d 358)

*Julie A. Gorenc,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the briefs for appellant.

*Debra S. Peterson,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nola Foulston,* district attorney, were with her on the brief for appellee.

Opinion filed March 10, 1995.

The opinion of the court was delivered by

HOLMES, C.J.: Defendant Dennis Boyd appeals his jury convictions of two counts of attempted second-degree murder, K.S.A. 21-3402 and K.S.A. 1992 Supp. 21-3301, and one count of battery, K.S.A. 21-3412. The Court of Appeals in an unpublished opinion filed July 22, 1994, reversed the convictions and remanded the

case for a new trial based on the trial court's failure to provide a sufficient response to requests by the jury for witness testimony. The Court of Appeals found that issue dispositive of the case and did not address several other alleged trial and sentencing errors asserted by defendant. We granted the State's petition for review, and we now reverse the decision of the Court of Appeals and remand the case to that court for further proceedings.

The sole issue before this court on the petition for review is whether the trial court committed reversible error in responding to the jury's request for a read-back of certain testimony. The facts will be greatly summarized and limited to those necessary to decide the issue before the court.

Defendant lived with Debra Moore and her three children: Antonio, age seven at the time of trial; Brittany, age five; and Tajiha, age four. Antonio and Tajiha were the biological children of Boyd. Chris Lockhart was the father of Brittany. On June 29, 1992, defendant struck Debra several times during a fight at their home. Brittany and Tajiha were also home at the time. Debra escaped through a bedroom window and ran to seek help. She returned some time later with two police officers and found the two little girls stabbed in the stomach. Both children were hospitalized with life-threatening wounds that would have been fatal absent emergency care. Brittany was in the hospital for about a week and Tajiha was hospitalized three to four weeks. Fortunately, both survived. Defendant was charged with two counts of attempted first-degree murder of the two girls and one count of battery for the beating administered to Debra.

Brittany was interviewed by Wichita police detectives twice while in the hospital, and she subsequently testified at the defendant's trial. Detective Lawson, one of the detectives who interviewed Brittany in the hospital, also testified at trial. At the time of his first interview with Brittany, she was in intensive care and not very responsive. Later, at a second interview, she was much more alert and responsive to the officers' questions.

Brittany testified that defendant stabbed her and Tajiha. Although she sometimes referred to both defendant and her natural father, Chris Lockhart, as "Daddy," her testimony was clear that

she was referring to defendant as the person who did the stabbing. There was no evidence or testimony that Chris Lockhart was involved in the crimes in any way.

The defendant claimed he was not present, did not live there, and knew nothing about the fight and stabbings. All of those assertions were clearly contrary to other credible evidence. He claimed an alibi but produced no alibi witnesses, although he maintained he had several.

During jury deliberations, the jury made the following request:

"Request the Transcript

"1. On the scene testimony of the officer that responded to the call and drove Debra to the House on June 29, 1992. (What the officer heard from the time he entered the house until EMS Transported the Children.)

"2. We request the transcript of Brittany's testimony the first time she was interviewed in the hospital by *detective*? Lawson?

"3. The end of Brittany's testimony as to who else was at the house when she was hurt?

"4. The closing remarks of the defense attorney as it relates to drug use. The paragraph before and after the statement.

"5. We would like to request Brittany's opening comments up through the first 3 or 4 questions.

[Jury foreman's signature]

"Did Brittany make a comment about being stabbed before she was asked the question."

In response to the jury's first request the judge had the court reporter read back a portion of the testimony of the officer who first accompanied Debra into the house and discovered the victims. The court denied the jury's second request, stating: "Your request for a copy of Brittany's transcript must be denied because it was never marked as an exhibit and the transcript itself did not become an exhibit or part of the evidence, so I cannot allow you to have that." No response was made to the third request as it had been crossed out by the jury with "O.K." written beside it before submission to the court. The judge denied request number four, explaining to the jury that the attorneys' closing arguments did not constitute evidence admitted at trial. In response to inquiry five and the question following the jury foreman's signature, the following testimony of Brittany was read to the jury:

"Q. Okay. Brittany, did you ever get hurt on your stomach; yes or no?
"A. (The witness shook her head.)
"Q. Can you answer out loud for me.
"A. No.
"Q. Okay. Did you ever have to go to the hospital?
"A. (The witness nodded.)
"Q. Yes or no?
"A. Yes.
"Q. Why'd you have to go to the hospital?
"A. 'Cause I got stabbed."

These were the first substantive questions asked of Brittany. All preceding questions were merely qualifying questions directed to her because of her young age. The defendant's assertion of error hinges around the trial court's response to requests two and five.

The defendant and his counsel were present during the entire proceedings and, after the jury was excused to return to the jury room, the court inquired:

"THE COURT: Record should reflect the jury's departed. Mr. Loeffler, anything else we need on the record?
"MR. LOEFFLER: Nothing, your Honor.
"THE COURT: Anything else on behalf of the State?
"MS. BARNETT: No, your Honor.
"THE COURT: All right. We're in recess.
"MR. LOEFFLER: Thank you, your Honor."

At no time during the read-back proceedings or thereafter did defendant object to the court's answers or seek any clarification of the jury's requests or of the responses given by the court. Likewise, the jury made no further inquiry of the court and was apparently satisfied with the information provided to it. Shortly after the jury had reconvened, it brought in a verdict of guilty to two counts of attempted second-degree murder and one count of battery.

We now turn to the issue of whether the trial court committed reversible error in its responses to the jury's requests for a read-back of trial testimony. K.S.A. 22-3420(3) provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where . . . *the evidence shall be read or exhibited to them in the presence of the defendant*, unless he voluntarily absents

himself, and his counsel and after notice to the prosecuting attorney." (Emphasis added.)

The Court of Appeals in reversing the trial court relied heavily on our recent decision in *State v. Myers*, 255 Kan. 3, 872 P.2d 236 (1994). *Myers* was before this court on a petition for review of an unpublished opinion of the Court of Appeals. In *Myers*, we adopted several portions of the Court of Appeals' unpublished opinion and included them in our opinion. The defendant, before this court, also relies primarily on *Myers*. In *Myers*, the jury requested the police reports of three police officers or, in the alternative, copies of the testimony of the three officers. The jury also requested the testimony of Dr. Logan, a defense witness. The trial court responded: "Here's your answer. The answer's no, please reread your instructions." 255 Kan. at 4.

As noted by the Court of Appeals, the record did not reflect " 'whether the defendant, his counsel, and the prosecuting attorney were present at the time the jury questions were asked and answered.' " 255 Kan. at 4. The Court of Appeals' decision in *Myers* hinged largely on the fact that the record was silent on whether the defendant and his counsel were present. In discussing whether the defendant waived any objection to the response to the jury's requests, this court stated:

"The Court of Appeals noted that the record did not reflect 'whether the defendant, his counsel, and the prosecuting attorney were present at the time the jury questions were asked and answered.' The State does not argue waiver. Myers failed to object to the response to the jury's questions. The Court of Appeals reasoned that, even if the State had advanced such a claim, 'we would not be able to consider it because we would have to assume, without knowing, that the defendant and his counsel were present and were given the opportunity to object. The record does not indicate anything either way on that issue. We are not comfortable foreclosing an important issue based on assumptions.' " 255 Kan. at 4.

In *Myers*, this court, in considering the jury's request, adopted the Court of Appeals' observation

" 'that the jury's question was somewhat confusing. It asked for copies of the testimony. We realize at that point no transcript or copies of the testimony existed and the jury's request could not be granted in a literal sense. The jury intended, by its question, to request a "read-back" of the testimony identified.

" 'However, terms such as "transcript" and "read-back" are lawyer terms and a lay jury would not necessarily understand the terms. There is also no reason to assume the jury understood that no transcript is available until the court reporter transcribes the testimony taken in open court, that this transcription will not occur unless requested, and that the request for transcription usually occurs for appellate purposes after the trial is concluded and verdict returned. We can neither expect nor require lay jurors to speak proper legalese, nor can we expect them to ask questions in that format.

" 'We think a jury's request must be interpreted on a common-sense basis. What is obvious about this jury's request is that it wanted an opportunity to read or hear the requested testimony one more time before it reached a decision. It is far too simplistic to write off a jury's request as asking only for a transcript which was not available. At the very least, the trial court was obligated to make a meaningful response to the jury's question and advise it of its right to be given a read-back of the testimony.' " 255 Kan. at 5.

The issue of the propriety of reading testimony to a jury in answer to a jury's request was approved long ago in *State v. Logue*, 115 Kan. 391, Syl. ¶ 1, 223 Pac. 482 (1924). In *State v. Sully*, 219 Kan. 222, 228, 547 P.2d 344 (1976), we stated:

"Under K.S.A. 22-3420(3) jurors may, after they have retired for deliberation, request further information as to the law or evidence in the case, but such requests are generally addressed to the trial court's discretion. (ABA Standards Relating to Trial by Jury [Approved Draft, 1968] § 5.3). This rule has been applied in Kansas (see *State v. Wilson*, 169 Kan. 659, 220 P.2d 121)."

While K.S.A. 22-3420(3) places a mandatory duty upon the trial court to respond to a jury's request for further information "as to any part of the law or evidence arising in the case," the manner and extent of the trial court's response rest in the sound discretion of the trial court.

In *State v. Redford*, 242 Kan. 658, 750 P.2d 1013 (1988), the defendant appealed his convictions of several crimes perpetuated against the victim, Donna. During deliberations the jury requested that the testimony of Donna and Redford be read to them. Donna's testimony was unavailable due to illness of the court reporter. A different reporter, who took Redford's testimony, was able to read back his testimony. The jury returned a verdict prior to hearing Donna's testimony. On appeal the defendant claimed error because the testimony of both witnesses was not read to the jury. The court found no error and in doing

so stated: "The means by which the court complies with a jury request to have testimony read back is subject to its discretion." 242 Kan. at 668.

In *Myers,* we discussed the decisions in *Redford* and *State v. Ruebke,* 240 Kan. 493, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987), which also applied the discretionary standard to the manner in which the court responds to the jury's requests. In doing so we stated:

"K.S.A. 22-3420(3) states that the testimony 'shall be read.' A trial court is required to accede to a jury's request to read back testimony. We do not believe, however, that such a strict construction forecloses all trial court discretion as to the manner of acceding to the request. Both *Ruebke* and *Redford* are consistent in the view that the trial court has the discretion to control the read-back. The trial court is free to clarify the jury's read-back request where the read-back request is unclear or too broad, or the read-back would jeopardize the manageability of the trial. Discretion rests with the trial court to clarify and focus the jury's inquiry." 255 Kan. at 8.

Thus, our cases are consistent that a trial court may not ignore a jury's request submitted pursuant to K.S.A. 22-3420(3) but must respond in some meaningful manner or seek additional clarification or limitation of the request. It is only when the trial court makes no attempt to provide a meaningful response to an appropriate request or gives an erroneous response that the mandatory requirement of K.S.A. 22-3420(3) is breached. Once the trial court attempts to give an enlightening response to a jury's request or seeks additional clarification or limitation of the request, then the standard of review as to the sufficiency or propriety of the response is one of abuse of discretion by the trial court.

In *Myers,* we also considered the issue of waiver based upon no showing of any objection by the defendant. We stated:

"Does Myers' failure either to object or show prejudice require that his convictions be affirmed? The mandatory directive in K.S.A. 22-3420(3) moves the trial court's response out of the realm of discretion; consequently, Myers need not show prejudice. No discussion among the trial court and counsel concerning the merit of the jury's request is in the record. *The presence of Myers or his counsel at the hearing on the request should not be implied. Myers has not waived his right to raise the issue on appeal.*" (Emphasis added.) 255 Kan. at 9.

Both the Court of Appeals and this court in *Myers* based their decisions not only on the fact that K.S.A. 22-3420(3) mandates a meaningful attempt to comply with the jury's requests, or at least seek clarification or limitation thereof, but also on the fact that there was no showing that the defendant and his counsel were present when the court refused to furnish the requested information. Both courts recognized that they would not imply that the defendant was present and, absent a showing that the defendant was present, the courts would not assume the defendant waived any objection to the trial court's denial of the request. The converse of such holding is that under appropriate circumstances a defendant may be deemed to have waived any objection to a trial court's response to a read-back request.

In the case now before the court the record clearly shows defendant participated in the proceedings and was given the opportunity on the record to voice any objections or to suggest a different response. He did not do so. The time-honored rule that an issue not presented to the trial court may not be raised for the first time on appeal, *State v. Ji,* 251 Kan. 3, 17, 832 P.2d 1176 (1992), also applies to jury requests under K.S.A. 22-3420(3). As the State points out, a timely objection is necessary to give the trial court the opportunity to correct any alleged trial errors. See *State v. Wolfe,* 194 Kan. 697, 699, 401 P.2d 917 (1965). Clearly, the defendant had the opportunity to object and to inform the trial court of his dissatisfaction with the ruling while the court still had a chance to correct any error. By failing to object, the defendant waived his right to raise the issue on appeal.

As with most rules there may be circumstances which create an exception. We have recognized an exception to the requirement that an issue must be raised in the trial court to be considered on appeal in exceptional circumstances, where consideration of the issue is necessary to serve the ends of justice or prevent a denial of fundamental rights. *State v. Edwards,* 252 Kan. 860, 863-64, 852 P.2d 98 (1993).

The defendant argues exceptional circumstances are present in this case because he has been denied his fundamental right to a fair trial. The Court of Appeals in the instant case stated:

"It is clear that a defendant has a fundamental right to have his or her guilt or innocence adjudicated by a jury. The jury process cannot be compromised in any way. *Myers*, 255 Kan. at 6. The issue of failure to provide a requested read-back may be heard for the first time on appeal to prevent the denial of fundamental rights."

Although we find no denial of defendant's fundamental rights here, we will, out of an abundance of caution, consider the merits of defendant's arguments relating to the sufficiency of the trial court's responses.

Even if the record here supported a finding of exceptional circumstances, which it does not, the responses of the court to the jury's requests do not constitute an abuse of discretion or justify a reversal of the convictions. The trial judge did not refuse to answer the jury's requests as was done in *Myers* but to the contrary did respond, apparently to the satisfaction of both defendant and the jury.

The Court of Appeals based its decision on the trial court's response to the jury's request number two for the "transcript of Brittany's testimony the first time she was interviewed in the hospital by *detective*? Lawson?" The trial court explained to the jury that it was not entitled to the transcript because the transcript was not admitted into evidence. The Court of Appeals held the trial court erred in failing to recognize that what the jury really wanted was a read-back of the testimony of the officer regarding the hospital interview. The officer apparently used a transcript from the interview during his testimony. While it is easy to read a cold record and speculate on what the jury may or may not have wanted in its somewhat ambiguous request, it is a different situation entirely for the trial judge who has all the parties and the jury before him. Obviously, the trial judge had no problem with the request and responded to the jury. The jury did not seek further information, and the defendant did not object to the response when he had every opportunity to do so. The trial judge had the opportunity to observe the demeanor and reaction of the jury and the parties, neither of which is available to us from the printed page. While in hindsight it might have been better if the trial court had explained to the jury that it could have portions

of the officer's testimony read in lieu of the transcript of his interview with Brittany, we do not find the response as being so lacking or negative as to constitute an abuse of discretion or to be an infringement upon the defendant's fundamental rights.

Request number one asked for the testimony of the police officer who first entered the house with Debra. The trial court had the reporter read to the jury the part of the testimony that the court deemed relevant to the request. Request number three did not require a response as it was stricken out by the jury and the court appropriately made no response. Request number four sought a portion of closing argument, and the trial court was correct in denying the request on the grounds that argument is not evidence in the case. In doing so, the court did explain its reasons to the jury. The defendant raises no serious argument concerning the trial court's response to requests one and four or the lack of a response to number three. Request number five for Brittany's opening comments and the subsequent question relating to her testimony about being stabbed were answered by reading to the jury the first several substantive questions and answers, which also included the stabbing testimony. In oral argument before this court, defense counsel asserted that the response was erroneous because it did not comply literally with the jury request for "the first three or four questions." Such an argument is totally frivolous considering the first four questions were limited to Brittany's name and age.

The trial court did not refuse to answer the jury's requests or give a totally inadequate or erroneous response and therefore did not breach the mandatory requirements of K.S.A. 22-3420(3) as held and discussed in *Myers* and as later recognized in *State v. Bruce*, 255 Kan. 388, 396-97, 874 P.2d 1165 (1994). As to the manner in which the trial court responded to the jury requests, and the extent of such response, the test is whether the trial court abused its discretion. We find no abuse of discretion here. In addition, the defendant made no objection to the procedure followed or the responses given by the trial court and cannot now be heard to complain for the first time on appeal. For all the foregoing reasons we reverse the Court of Appeals.

As there were other issues raised on appeal which were not addressed by the Court of Appeals and were not included in the petition for review before this court (See Supreme Court Rule 8.03[g][1] [1994 Kan. Ct. R. Annot. 50]), we reverse the Court of Appeals and remand the case to the Court of Appeals for further proceedings on the other issues.

ALLEGRUCCI, J., dissenting: Although I agree with the majority that K.S.A. 22-3420(3) places a mandatory duty upon the trial court to respond to the jury's request, I respectfully dissent from the majority's holding that

"[t]he time-honored rule that an issue not presented to the trial court may not be raised for the first time on appeal, *State v. Ji*, 251 Kan. 3, 17, 832 P.2d 1176 (1992), also applies to jury requests under K.S.A. 22-3420(3). As the State points out, a timely objection is necessary to give the trial court the opportunity to correct any alleged trial errors. See *State v. Wolfe*, 194 Kan. 697, 699, 401 P.2d 917 (1965). Clearly, the defendant had the opportunity to object and to inform the trial court of his dissatisfaction with the ruling while the court still had a chance to correct any error. By failing to object, the defendant waived his right to raise the issue on appeal."

The defendant should not be precluded from raising the issue on appeal for two reasons. The response by the court to the jury's request was in the nature of supplemental instructions given during jury deliberations and, as such, K.S.A. 22-3414(3) applies. See *State v. Ruebke*, 240 Kan. 493, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987). K.S.A. 22-3414(3) provides that the clearly erroneous standard applies on appeal if the defendant fails to object to the instruction at trial.

In addition, the trial court's duty to "respond in some meaningful manner" under K.S.A. 22-3420(3) is analogous to the court's duty to instruct on lesser included offenses under K.S.A. 21-3107(3). Under both statutes, the legislature has placed an absolute duty with the trial court. The defendant need not request or object in order to preserve the issue on appeal when the trial court fails to instruct on a lesser included offense. Such failure by the trial court is reversible error. In my opinion, so should it be when the trial court refuses or fails to respond to the jury's request under K.S.A. 22-3420(3).

I would reverse the defendant's conviction and remand for new trial.

LOCKETT, J., joins the foregoing dissent.